UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALT TERRAIN, LLC, | X<br>)<br>) | |
| Plaintiff, | )<br>) | Civil Action No.: |
| v. | )<br>) | COMPLAINT AND DEMAND |
| DASH TWO, INC., | )<br>) | FOR JURY TRIAL |
| Defendant. | )<br>)<br>)<br>X | |

The plaintiff, ALT TERRAIN, LLC. ("ALT TERRAIN" or "plaintiff"), for its complaint against the defendant Dash Two, Inc. ("Dash Two" or "defendant"), states that:

NATURE OF THE ACTION

1. The plaintiff, ALT TERRAIN, brings this action for declaratory judgment that ALT TERRAIN does not infringe Dash Two's alleged rights in "WILD POSTING" for at least the reason that the term "Wild Posting" is a generic name for the goods or services provided by ALT TERRAIN.

2. The plaintiff, ALT TERRAIN, further brings this action to request that this Court, pursuant to 15 U.S.C. §§ 1064 and 1119, cancel Dash Two's U.S. Trademark Registration No. 5,432,087 ("the '087 Registration") for "WILD POSTING" in Class 35 for Outdoor advertising and U.S. Trademark Registration No. 5,432,094 ("the '094 Registration") for WILD POSTING and design in Class 35 for Outdoor advertising (collectively "Dash Two's WILD POSTING Registrations"); and Dash Two's pending U.S. Trademark Application No. 98/023,365 for "WILD POSTINGS" in Class 35 for Preparing and placing outdoor advertisements for

others("the '365 Application"), at least because the registered "marks" and the applied for "mark" are generic and therefore do not meet the statutory definition of a trademark under 15 U.S.C. § 1127 because they do not "identify and distinguish" Dash Two's services and do not "indicate the source" of such services.

## JURISDICTION AND VENUE

3. This is a civil action regarding allegations of trademark infringement arising under the trademark laws of the United States, Title 35 of the United States Code, in which ALT TERRAIN seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq..

4. This Court has jurisdiction of the subject matter of this action under 28 U.S.C. §§ 1331, 1367(a), and 1338, the Lanham Act, Title 15 of the United States Code, and principles of supplemental and ancillary jurisdiction. This Court has subject matter jurisdiction over the plaintiff's claims arising under the trademark laws of the United States. The Court also has supplemental jurisdiction over related claims arising under Massachusetts law.

5. This Court has jurisdiction of the subject matter of this action under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq. based on Dash Two's accusations against ALT TERRAIN of trademark infringement, and thereby giving rise to an actual case or controversy under 28 U.S.C. §§ 2201 and 2202. In particular, there is an active, substantial case or controversy between ALT TERRAIN and Dash Two having adverse legal interests regarding whether ALT TERRAIN infringes DashTwo's alleged rights in the terms "WILD POSTING" and "WILD POSTINGS" and whether Dash Two's WILD POSTING Registrations and applied for registration are valid, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because a substantial part of the events giving rise to the claims occurred here.

7.      This Court has personal jurisdiction over the defendant because it has regular and consistent contacts with the Commonwealth of Massachusetts sufficient to confer personal jurisdiction.

8.      At least for these reasons and the reasons set forth below, a justiciable controversy exists between the parties that is of sufficient immediacy and reality to warrant declaratory relief.

## THE PARTIES

9.      The plaintiff, ALT TERRAIN, LLC. ("ALT TERRAIN" or "plaintiff"), is a Massachusetts limited liability corporation with a place of business at 54 North Leverett Road, Leverett, Massachusetts 01054.

10.     The defendant, Dash Two, Inc. ("Dash Two" or "defendant"), is a California corporation with a place of business at 214 S. Locust Street #200, Inglewood, California  90301.

## FACTUAL BACKGROUND

## HISTORY OF WILD POSTING AS A GENERIC TERM

11.     Since at least as early as 2003, the plaintiff ALT TERRAIN has been providing marketing services to customers across the United States and worldwide.

12.     ALT TERRAIN, LLC was organized as a Massachusetts limited liability corporation on October 1, 2003.

13.     Since at least 2003, ALT TERRAIN, as part of its marketing services, has also provided goods and services comprising of placement of street-level posters throughout cities to promote brands, events, concerts, movies, and causes.  ALT TERRAIN has referred to the aforementioned goods and services using the generic terms "wild posting" and "wild postings."

14. Since at least 2003, ALT TERRAIN at least on its website, https://altterrain.com/, has used the term "wild postings" as a generic term to refer to a marketing campaign that includes the placement of street-level posters.

15. On January 12, 2004, MediaLife Magazine published an article about ALT TERRAIN's wild posting advertising campaigns. The article used the terms "wild postings" and "wild posting" as generic terms to refer to the act of placing posters as part of a guerilla marketing campaign. Included herewith as Exhibit A is a copy, made August 3, 2023, of the January 12, 2004 Media Life Magazine article achieved and accessed using the Wayback Machine.

16. Since at least 2005, ALT TERRAIN, at least on its website, https://altterrain.com/, has used the term "wild posting" as a generic term to refer to a marketing campaign that includes the placement of street-level posters.

17. Further, ALT TERRAIN has regularly provided marketing goods and services, identified using the generic terms "wild postings" and "wild posting," for customers and brands, including for example Patagonia, Sierra Nevada Brewing, Microsoft, Converse, and Urban Outfitters. These goods and services were provided, for example, at locations that include Austin, Jersey City, Boston, Miami, Chicago, San Francisco and many others across the United States. Included herewith as Exhibit B is a copy, made August 3, 2023, of pages of ALT TERRAIN's website using the terms "wild posting" and "wild postings."

18. As non-limited examples, ALT TERRAIN provided goods and services identified using the generic terms "wild postings" and "wild posting" to Nevada Brewing, Bonfils Blood Center, and The Robey before March 2017, the claimed date of first use of the alleged marks in Dash Two's WILD POSTING Registrations.

19. The terms "wild posting" and "wild postings" are ubiquitously used by marketing companies, including both ALT TERRAIN and Dash Two, as generic terms to refer to street-level poster advertising. For example, Seen Media, at least on the website, https://www.seenmedia.com/services/wildposting, advertises poster based marketing goods and services, provided worldwide, described using the generic term "wild posting." Similarly, Chuck Agency uses the term "wild posting" at the website, https://www.chuckagency.com/, as a generic term to describe its poster-based marketing of goods and services offered in Los Angelos, San Franscio, Chicago, Miami, and Boston. Included herewith as Exhibit C are copies, made August 3, 2023, of third party marketing companies using the terms "wild posting" and "wild postings" as generic descriptions of a type of marketing goods and services.

20. The terms "wild posting" and "wild postings" have been and are used as generic term to refer to marketing goods and services that utilize street-level posters and have been and are used as informational messages to identify a well-known type of marketing, regardless of the source or origin. Included herewith as Exhibit D are copies, made August 3, 2023, of pages of third party websites using the terms "wild posting" and "wild postings" as generic descriptions of a type of marketing goods and services.

21. Because of the widespread use of the terms "wild posting" and "wild postings," and at least because of the informational nature of the terms and their connection with a well-known type of marketing, the public does not use or understand the terms as source identifiers.

THE DEFENDANT'S ATTEMPT TO MONOPOLIZE "WILD POSTING"

22. On information and belief, the defendant, Dash Two, Inc., was incorporated as a California corporation on March 21, 2013.

23. On information and belief, Dash Two uses the terms "wild posting" and "wild postings" to refer to their marketing of goods and service that include the use of street-level posters. On information and belief, Dash Two's use of the terms "wild posting" and "wild postings" post-dates ALT TERRAIN's use of "wild posting" and "wild postings" as generic terms.

24. On information and belief, Dash Two offers for sale, promotes, and sells its marketing services, including its wild posting marketing services, in Massachusetts, including but not limited to, in Boston. On information and belief, Dash Two provided wild posting marketing services to Ecco Comozo at least at 2412 N Miami Ave, Boston, Massachusetts 02132.

25. On April 15, 2017, Dash Two applied to register "WILD POSTING" in class 35 for Outdoor advertising with an alleged date of first use of March 20, 2017. On March 27, 2018, the USPTO issued the application as U.S. Trademark Registration No. 5,432,087 ("the '087 Registration"). Included herewith as Exhibit E is a copy of the '087 Registration.

26. On April 15, 2017, Dash Two applied to register WILD POSTING and design, ![WILD POSTING], in class 35 for Outdoor advertising with a claimed date of first use of March 20, 2017. On March 27, 2018 the USPTO issued the application as U.S. Trademark Registration No. 5,432,094 ("the '094 Registration"). Included herewith as Exhibit F is a copy of the '094 Registration.

27. On June 1, 2023, Dash Two applied to register "Wild Postings" in class 35 for Preparing and placing outdoor advertisements for others with an alleged date of first use of

October 10, 2010.  This application is still pending as U.S. Trademark Application No. 98,023,365 ("the '365 Application").  Included herewith as Exhibit G is a copy of the '365 Application.

28.     On information and belief, Dash Two owns and operates the website https://wildposting.com/ where it advertises its marketing goods and services using the terms "wild posting" and "wild postings" to refer to the marketing activity of placing street-level posters.  The website, https://wildposting.com/, identifies "Boston" as a market covered by Dash Two's wild posting marketing services.   Included herewith as Exhibit H are copies, made August 3, 2023, of pages of Dash Two's https://wildposting.com/ website.

29.     On information and belief, Dash Two provides a "Guide" to wild posting, accessible on the website https://wildposting.com/, that uses the terms "wild posting" and "wild postings" as generic terms to describe the marketing technique of "pasting advertisements on buildings, bulletin boards, construction site plywood and anywhere else beyond the ordinary out-of-home advertising venues like billboards."  Included herewith as Exhibit I is a copy, made August 2, 2023, of Dash Two's "Guide" to wild posting.

30.     On information and belief, Dash Two owns and operates the website, https://dashtwo.com/, which hosts a blog post by Gino Sesto, Founder of Dash Two, published March 21, 2016.  https://dashtwo.com/blog/the-ins-and-outs-of-wild-posting/.  The blog post, in response to the question "What is Wild Posting" states, "Like a rock through a window, **this form of out of home advertising isn't new,** but it's effective.  It's been called a lot of things like flyposting, bill posting, and poster sniping; but the act is the same getting your posters posted in high traffic areas to bring the message to the people." (Emphasis added).  The blog post uses the term "wild posting" as a generic term to describe a marketing technique.   Included

herewith as Exhibit J is a copy, made August 2, 2023, of Dash Two's blog post published March 21, 2016.

31.     The terms "wild posting" and "wild postings" were generic before their use by Dash Two.  Even if the marks were not generic at that time, Dash Two's failure or inability to police its alleged "WILD POSTING" and "WILD POSTINGS" marks has caused the "marks" to become the generic name for the goods or services on or in connection with which they are used or otherwise to lose their significance, if any, as a trademark, and, as such, the "marks" have been abandoned pursuant to 15 U.S.C. § 1127.

32.     On Tuesday, July 25, 2023, Gino Sesto, founder of Dash Two, sent an email to Adam Salacuse of ALT TERRAIN asserting that "I am sure you are very aware we have the mark for Wild Posting and we need to enforce the usage.  Let's discuss a timeline for the removal of 'Wild Posting' usage on your site." ("Cease and Desist Email").     Included herewith as Exhibit K is a copy of the Cease and Desist Email.  Adam Salacuse, the recipient of Dash Two's Cease and Desist Email, is a resident of Massachusetts and performs his work for ALT TERRAIN primarily in Massachusetts.

33.     At least as a result of Dash Two's Cease and Desist Email, ALT TERRAIN is under a reasonable apprehension of an impending suit by Dash Two.  ALT TERRAIN is also under a reasonable apprehension that Dash Two's improper assertion that of the generic terms "wild posting" and "wild postings" are their exclusive "marks" is having and will have an immediate chilling effect on its business and its customers.

## COUNT I
(Declaratory Judgment of Non-Infringement)

34.     ALT TERRAIN repeats and realleges paragraphs 1 through 33 of this complaint as if they were fully set forth.

35.     Dash Two has alleged that ALT TERRAIN's use of the generic term "wild posting," at least on Dash Two's website, infringes Dash Two's rights in the alleged mark "WILD POSTING."

36.     An actual and justiciable controversy exists between ALT TERRAIN and Dash Two as to ALT TERRAIN's purported infringement of Dash Two's asserted rights in the alleged mark "WILD POSTING."

37.     ALT TERRAIN does not infringe Dash Two's rights in the alleged mark "WILD POSTING" at least because the terms "wild posting" and "wild postings" are or have become generic for the marketing services including the placement of posters at street-level, and therefore the alleged marks "WILD POSTING" and "WILD POSTINGS" do not meet the statutory definition of a trademark under 15 U.S.C. § 1127 because they do not "identify and distinguish" Dash Two's services and do not "indicate the source" of such services.

38.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., ALT TERRAIN seeks a judgment that its use of the terms "wild posting" and "wild postings" do not infringe Dash Two's asserted rights in the alleged marks "WILD POSTING" and "WILD POSTINGS."

## COUNT II
(Declaratory Judgment of Invalidity and Cancellation of the Registrations)

39.     ALT TERRAIN repeats and realleges paragraphs 1 through 38 of this complaint as if they were fully set forth.

40. Dash Two has alleged that ALT TERRAIN's use of the generic term "wild posting," at least on Dash Two's website, infringes Dash Two's rights in the alleged mark "WILD POSTING."

41. An actual and justiciable controversy exists between ALT TERRAIN and Dash Two as to the validity of Dash Two's asserted rights in the alleged "WILD POSTING" and marks including, but not limited to, the validity of Dash Two's WILD POSTING Registrations.

42. Dash Two's WILD POSTING Registrations are invalid at least because the terms "wild posting" and "wild postings" are or have become generic for the marketing services including the placement of posters at street-level and therefore alleged "WILD POSTING" marks do not meet the statutory definition of a trademark under 15 U.S.C. § 1127 because the do not "identify and distinguish" Registrant's services and do not "indicate the source" of such services. Therefore, Dash Two's WILD POSTING Registrations should be cancelled or withdrawn pursuant to 15 U.S.C. § 1064(3).

43. Furthermore, the "WILD POSTING" alleged marks have been abandoned through Dash Two's conduct, including acts of omission and/or commission, which has caused the "marks" to become, to the extend they were not beforehand, the generic name for the services in connection with which it is used or otherwise to lose their significance as trademarks. Therefore, Dash Two's WILD POSTING Registrations should be cancelled or withdrawn pursuant to 15 U.S.C. § 1064(3).

44. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., ALT TERRAIN seeks a judgment that Dash Two's WILD POSTING Registrations are invalid and an Order cancelling Dash Two's WILD POSTING Registrations.

<u>COUNT III</u>

(Cancellation of the '365 Application)

45. ALT TERRAIN repeats and realleges paragraphs 1 through 44 of this complaint as if they were fully set forth.

46. The trademark Applicant in Dash Two's WILD POSTING pending application, the '365 Application, is the defendant in the present action and it is the Registrant in Dash Two's WILD POSTING Registrations.

47. The '365 Application is for a mark that is the same as the mark in the Dash Two's WILD POSTING Registrations, adding an "S" at the end of "POSTING."

48. Dash Two's WILD POSTING pending application, the '365 Application, should be cancelled at least because the term the application seeks to register is generic.

WHEREFORE, the plaintiff, ALT TERRAIN, demands judgment:

A. Declaring that ALT TERRAIN's use of the terms "wild posting" and "wild postings" do not infringe Dash Two's trademark rights, including but not limited to any common law rights and any rights granted by Dash Two's WILD POSTING Registrations;

B. Ordering the cancellation, pursuant to 15 U.S.C. §§ 1064(3) and 1119 of U.S. Trademark Registration Nos. 5,432,087 and 5,432,094 at least because the term "wild posting" is generic and does not meet the statutory definition of a trademark under 15 U.S.C. § 1127;

C. Ordering the cancellation, pursuant to 15 U.S.C. §§ 1064(3) and 1119, of U.S. Trademark Application No. 98/023,365 at least because the term "wild postings" is generic and does not meet the statutory definition of a trademark under 15 U.S.C. § 1127; and

D. Granting such other and further relief as this Court may deem just and proper.

THE PLAINTIFF DEMANDS A TRIAL BY JURY.

ALT TERRAIN, LLC

By its attorneys,

/Samuel J. Sussman/
Susan G. L. Glovsky (BBO# 195880)
susan.glovsky@hbsr.com
Samuel J. Sussman (BBO# 696909)
samuel.sussman@hbsr.com
Hamilton, Brook, Smith & Reynolds, P.C.
155 Seaport Blvd.
Boston, Massachusetts  02210
Telephone:  617-607-5900
Fax:  978-341-0136

Dated: August 4, 2023

3811416.v1